**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Mark WHITAKER, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 28, 2005.

Filed June 30, 2005.

---

Norris E. Gelman, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: TODD, MONTEMURO * and POPOVICH, JJ.

* Retired Justice assigned to Superior Court.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Mark Whitaker appeals the judgment of sentence entered on October 29, 2003, in the Court of Common Pleas of Philadelphia County. Appellant was sentenced to life imprisonment following his conviction on charges of second-degree murder, robbery, criminal conspiracy, and related offenses. On appeal, Appellant asserts that the trial court abused its discretion in its admission of certain testimony and that trial counsel was ineffective. Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: On the evening of January 26, 1999, Appellant, Abdul Lee Stewart (Stewart), and Stephen Shakuur (Shakuur) went into Happy Days Bar, located at the corner of Front Street and Girard Avenue in Philadelphia. After entering the bar, the three men ordered drinks and, according to eyewitnesses, appeared to be "casing" the bar. At approximately the same time, Donna Mestichelli, the daytime bartender, completed her shift and was replaced by Mario Lim. Both bartenders tallied the day's cash receipts and placed the cash into a bag. The bag was then placed under the bar on a shelf. Ms. Mestichelli remained in the bar after her shift with her boyfriend, Thomas Cenevivia, and her brother, Thomas Zingani.

¶ 3 After the cash receipts were placed under the bar, Appellant exited the bar and, brandishing a firearm, entered through a different door. Appellant trained his firearm on Craig Brockington and Danny Clark, two bar patrons, and ordered the two men to lie on the floor. Stewart produced a firearm, went behind the bar, and struck Mr. Lim repeatedly. Thereafter, Stewart pressed the firearm to Mr. Lim's head and fired. Stewart then took the cash in the cash register and the cash receipts from under the bar. Shakuur held Ms. Mestichelli, Mr. Zingani, and

Mr. Cenevivia at gunpoint during the robbery. Mr. Zingani attempted to walk toward Shakuur, and Shakuur shot him in the right side.

¶ 4 After retrieving the cash, Appellant, Stewart, and Shakuur fled the scene. The police were called after the three men left and arrived a few minutes after the incident. After being transported to Hahnemann Hospital, Mr. Lim died of his wounds. Mr. Zingani was treated for his gunshot wounds and survived, although he was paralyzed permanently as a result of the shooting.

¶ 5 Stewart and Shakuur were identified by the eyewitnesses after they were shown photo arrays by the police. Based on this information, the police arrested Stewart and Shakuur. While in custody, Stewart gave the police both a written and videotaped confession.

¶ 6 Appellant was arrested on April 2, 2002, and was charged with second-degree murder, robbery, criminal conspiracy, and related offenses. Mr. Cenevivia, a resident of Florida, was in Pennsylvania for the purpose of testifying on behalf of the Commonwealth in Shakuur's trial, and, on April 4, 2002, he identified Appellant from a photo array as the third participant in the robbery of the bar.

¶ 7 The case proceeded through pre-trial pleadings, and, on June 12, 2002, the Commonwealth sought to consolidate Appellant and Stewart's cases for joint trial. The trial court granted the Commonwealth's request on June 19, 2002. Thereafter, on January 3, 2003, Appellant, through his attorney, Kenneth Mirsky, Esquire, filed a motion *in limine* to preclude the Commonwealth from introducing Stewart's confession (with Appellant's name redacted from the confession) against Stewart at a joint trial. The motion also sought to preclude trial testimony from Mr. Cenevivia regard-

ing the substance of a conversation between Appellant and Shakuur regarding the case that Mr. Cenevivia overheard while he was incarcerated in the Philadelphia County Prison with Appellant and Shakuur. On October 7, 2003, following a hearing, the trial court denied Appellant's motion.

¶ 8 The case proceeded to a jury trial on October 16–29, 2003, and, at the conclusion of trial, the jury found Appellant guilty of second-degree murder, robbery, criminal conspiracy, and related offenses. Immediately after trial, the trial court sentenced Appellant to a mandatory sentence of life imprisonment. After trial, Appellant procured new counsel, Norris E. Gelman, Esquire. On November 7, 2003, Appellant, through Attorney Gelman, filed post-sentence motions. On February 18, 2004, Appellant, pursuant to Pa.R.Crim.P. 720(B)(3)(b), requested a 30-day extension for the time in which his post-sentence motions were to be decided because the transcripts of trial had not been prepared. The trial court granted Appellant's motion. Thereafter, on March 3, 2004, Appellant requested permission to file a supplemental post-sentence motion that raised several claims of trial counsel's ineffective assistance. Appellant included the supplemental post-sentence motion with his request. The trial court granted Appellant's request and permitted Appellant to file the supplemental post-sentence motion. Thereafter, on March 18, 2004, following a hearing, the trial court denied Appellant's post-sentence motions. The trial court did not author an opinion in support of its denial of Appellant's post-sentence motions.

¶ 9 Appellant filed a timely notice of appeal to this Court on March 30, 2004.

The trial court did not order Appellant to file a concise statement of matters. The trial court did not file an opinion in this case.[1]

¶ 10 Appellant presents the following issues for our review:

1. Did the trial court err in redacting [Stewart's] confession so that Appellant's name was replaced with "the other guy?"

2. Did the [trial court] err in admitting the videotape of [Stewart's confession] as it was apparent that this tape was edited, and the jury could infer that, where edited, the tape referred to Appellant[?]

3. Did the [trial court] err in admitting the conversation between Shakuur and Appellant, which was overheard by [Mr. Cenevivia] in a Philadelphia prison?

4. Did the prosecutor vitiate the [redacted confession] by expressly naming Appellant as "the other guy" twice in his summation, thereby allowing the jury to replace "the other guy" with Appellant throughout the confession, and was trial counsel ineffective for failing to object to this [tactic]?

5. Was trial counsel ineffective for failing to request a limiting instruction as to the use the jury [could make] of Shakuur's statements made during the above conversation?

Appellant's brief, at 3.[2]

■ ¶ 11 First Appellant contends that his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution were violated due to the entry of Stewart's redacted confession into evidence at the joint trial. Appellant's name was redacted from Stewart's confes-

1. The presiding judge, the Honorable James A. Lineberger, is no longer sitting on the Court of Common Pleas of Philadelphia County.

2. We have renumbered Appellant's issues.

sion and replaced with "the other guy." However, the third conspirator, Shakuur, was identified by name in the confession. Therefore, Appellant argues that the confession implicated him by context and, as such, violated his Sixth Amendment rights.

¶ 12 In the seminal case of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that Bruton's Sixth Amendment right to confront witnesses was violated by the introduction of statements by Bruton's non-testifying co-defendant, Evans, that implicated Bruton by name, despite a limiting instruction from the trial court that Evans' statement should be considered only against him. *Bruton*, 391 U.S. at 135–36, 88 S.Ct. 1620. The Court held that, although the limiting instruction was given, the statements were of such a powerfully incriminating nature that it was unlikely that the jury would have followed the trial court's instruction. *Id.*, 391 U.S. at 135–36, 88 S.Ct. 1620.

¶ 13 In attempting to apply *Bruton*, most state and federal jurisdictions approved the practice of redacting confessions of non-testifying codefendants to remove references that expressly implicated the nonconfessing defendant. The United States Supreme Court considered the validity of this practice in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). In *Richardson*, the co-defendant's confession was redacted to remove all reference to Marsh, and the jury was specifically instructed to consider the confession only against the co-defendant. Marsh argued on appeal to the Supreme Court that, despite the redaction, admission of the co-defendant's confession violated her confrontation rights because it implicated her in the crime when linked with other evidence. *Richardson*, 481 U.S. at 200, 107 S.Ct. 1702.

¶ 14 The United States Supreme Court expressly rejected the theory of contextual implication, recognizing the important distinction between co-defendant confessions that expressly incriminate the defendant and those that become incriminating only when linked to other evidence properly introduced at trial, as was the case in *Richardson*. *Id.*, 481 U.S. at 208, 107 S.Ct. 1702. Where an incrimination arising from a redacted confession is merely inferential, the Court stated that, "it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." *Id.*, 481 U.S. at 208, 107 S.Ct. 1702. Where such linkage was required to implicate the defendant, the Court held, a proper limiting instruction was sufficient to satisfy *Bruton*. *Id.*, 481 U.S. at 208, 107 S.Ct. 1702. The *Richardson* Court expressed no opinion on the admissibility of a confession where the redaction consists of replacing the defendant's name "with a symbol or neutral pronoun." *Id.*, 481 U.S. at 211 n. 5, 107 S.Ct. 1702. The United States Supreme Court addressed this question in *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).

¶ 15 In *Gray*, the confession of Gray's non-testifying co-defendant, Bell, was read into evidence at their joint trial. *See Gray*, 523 U.S. at 188–89, 118 S.Ct. 1151. Whenever Gray's name, or the name of a third co-conspirator who had died prior to trial, Jacquin Vanlandingham, appeared in the confession, the police officer who read the statement into evidence substituted the word "deleted" or "deletion." *Id.*, 523 U.S. at 189, 118 S.Ct. 1151. Immediately after the officer had finished reading the confession to the jury, the prosecutor asked him, "after he gave you that information, you subsequently were able to arrest Mr. Kevin Gray, is that correct?" *Id.*, 523 U.S. at 189, 118 S.Ct. 1151. The police officer responded, "That's correct," and, thus, re-

inforced the implication that one of the names deleted referred to Gray. *Id.*, 523 U.S. at 189, 118 S.Ct. 1151.

¶ 16 On review, the Court held that the redaction of Bell's confession was insufficient under *Bruton* because redactions that replace a defendant's name with obvious indications of deletion, such as blank spaces, the word "deleted", or a similar symbol, resulted in statements that, when considered as a class, so closely resembled *Bruton's* unredacted statements that the law required that they be barred from admission at trial. *Gray*, 523 U.S. at 193, 118 S.Ct. 1151. In reaching this conclusion, the Court noted that juries will often react similarly to unredacted confessions and confessions redacted in the manner of the confession in *Gray* because the jury would often realize that the confession referred specifically to the defendant. *Id.*, 523 U.S. at 193, 118 S.Ct. 1151.

¶ 17 The Court also concluded that, in cases requiring an inference to connect the redacted statement to the defendant, it was the type of inference drawn by the jury that decided the question of whether *Bruton* forbade introduction of the statement. *Gray*, 523 U.S. at 196, 118 S.Ct. 1151. In contrast to *Richardson*, the statement presented in *Gray*, although redacted, referred obviously to Gray and, therefore, violated the Sixth Amendment. *Id.*, 523 U.S. at 196, 118 S.Ct. 1151. Thus, the question for a court's analysis became whether the statement itself, *independent of other evidence*, violates the Sixth Amendment. *Commonwealth v. Travers*, 564 Pa. 362, 372 n. 2, 768 A.2d 845, 850 n. 2 (2001) (emphasis added).

¶ 18 After the United States Supreme Court's decision in *Gray*, the Pennsylvania Supreme Court harmonized *Bruton*, *Richardson*, and *Gray* in *Commonwealth v. Travers*, at 362, 768 A.2d at 845, and concluded that the Commonwealth may introduce the confession of a non-testifying co-defendant at a joint trial where the statement is redacted to replace the defendant's name with a neutral pronoun and a limiting instruction is provided to the jury instructing them to consider the statement only against the confessing co-defendant. *Travers*, at 373, 768 A.2d at 851.

¶ 19 Under a *Travers* analysis, Stewart's statement would have been admissible at trial. Although the statement identified Shakuur and not Appellant, this fact, independent of the other evidence at trial, was not "powerfully incriminating" to such a degree that the trial court's curative instruction would not have cured any prejudice accruing to Appellant. *See Travers*, at 373, 768 A.2d at 851. As was the case in *Travers*, a powerfully glaring "hole" in the testimony pointing to Appellant is not present where, as here, his name is replaced with the generic term, "the other guy." *Id.*, at 373, 768 A.2d at 851. As stated above, the trial court instructed the jury to consider the confession only against Stewart. We presume that juries follow the instructions put to them by a trial court. *See Commonwealth v. Passarelli*, 789 A.2d 708, 713 (Pa.Super.2001). Accordingly, prior to the Supreme Court's recent landmark decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the statement would have been admissible at trial. We will now consider whether *Crawford* requires a different result.[3]

---

**3.** In this Commonwealth, in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at all stages of adjudication up to and including the direct appeal. *Common-*

*wealth v. Tilley*, 566 Pa. 312, 318, 780 A.2d 649, 652 (2001). To preserve a claim for review, the defendant must make a timely and specific objection to the introduction of the challenged evidence at trial. *See Common-*

¶ 20 In *Crawford*, the United States Supreme Court held that, when the prosecution seeks to introduce "testimonial" hearsay [4] into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the unavailable witness. *Crawford*, 541 U.S. at 59, 124 S.Ct. 1354. In so holding, the Supreme Court overruled its previous decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which permitted entry of out-of-court statements by an unavailable witness against a criminal defendant if the statement fell within a firmly rooted hearsay exception or otherwise bore particularized guarantees of trustworthiness. *Id.*, 541 U.S. at 62–66, 124 S.Ct. 1354.

■ ¶ 21 The United States Supreme Court eschewed a technical definition of what would constitute a "testimonial" statement, but it provided the following guidance for courts to determine what constitutes a "testimonial" statement:

Various formulations of this core class of "testimonial" statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing.

Statements taken by police officers in the course of interrogations are also testimonial even under a narrow standard. Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of the oath was not dispositive. That interrogators are police officers rather than magistrates does not change the picture either. Justices of the peace conducting examinations under the Marian statutes were not magistrates as we understand that office today, but had an essentially investigative and prosecutorial function. The involvement of government officers in the production of testimonial evidence presents the same risk,

*wealth v. Freeman*, 573 Pa. 532, 550, 827 A.2d 385, 395 (2003). The *Crawford* decision, announced after Appellant's conviction, advanced a new rule of law insofar as it overruled *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Furthermore, our review of the record reveals that Appellant objected, prior to trial, to the Commonwealth's introduction of Stewart's confession on Sixth Amendment Confrontation Clause grounds. Accordingly, we may consider whether the decision in *Crawford* warrants reversal in the present case. *See Common-*

*wealth v. Hood*, 872 A.2d 175, 184 (Pa.Super.2005) (in order to preserve *Crawford* argument, defendant was required to object to admissibility on Sixth Amendment Confrontation Clause grounds).

4. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Pa.R.E. 801(c). Generally, hearsay evidence is not admissible. *See* Pa.R.E. 802.

whether the officers are police officers or justices of the peace.

Crawford, 541 U.S. at 51–52, 124 S.Ct. 1354 (citations omitted). Confessions, regardless of source, are therefore "testimonial" statements within the ambit of Crawford. Id., 541 U.S. at 51–52, 124 S.Ct. 1354. Consequently, it is clear that Stewart's confession, introduced in the present case, is "testimonial."

¶ 22 Nevertheless, we are unable to find that Crawford obviates the principles set forth in the Bruton line of cases. Both Crawford and Bruton define the contours of the Confrontation Clause of the Sixth Amendment, but they do so for different purposes. Crawford ensures the procedural guarantee of the Confrontation Clause by requiring that the reliability of testimonial hearsay presented against the defendant be assessed in a particular manner, i.e., by testing in the crucible of cross-examination. Crawford, 541 U.S. at 61, 124 S.Ct. 1354. Bruton, and its progeny, Travers, on the other hand, act to neutralize the incriminating effect on the defendant of properly admitted confessions from a non-testifying co-defendant presented against the co-defendant at a joint trial. See Travers, at 373, 768 A.2d at 851. This distinction is crucial, and it arises from the core concern of Bruton, i.e., a confession from a non-testifying co-defendant that directly incriminates the defendant in a joint trial is of such a powerfully incriminating nature that a jury instruction limiting the jury's consideration of the confession to the co-defendant would be insufficient to cure the prejudice to the defendant from the confession's admission at trial. Bruton, 391 U.S. at 135–36, 88 S.Ct. 1620. Thus, Bruton and its progeny provide a narrow exception to the general presumption that juries follow the instructions placed on them by the trial court. Travers, at 366, 768 A.2d at 847.

¶ 23 Were we to find that Crawford bars the "contextual implication" of criminal defendants in the properly admitted confessions of non-testifying co-defendants, we would be extending the principles espoused in Crawford to an improper degree. We reach this conclusion because the defendant in a Travers-style case has no right to "test" the properly admitted confession of his co-defendant in the crucible of cross-examination because the confession was not offered against him at trial. Thus, the fear of incrimination of the defendant by context may be cured by the traditional jury instruction from the trial court. See Travers, at 366, 768 A.2d at 847. Arguably, Crawford's reach would apply only to the admission of the confession against the non-testifying co-defendant, which issue the defendant would lack standing to assert. See, e.g., Commonwealth v. Kinnard, 230 Pa.Super. 134, 326 A.2d 541, 544 (1974) (defendant lacks standing to raise constitutional rights of co-defendant). Accordingly, we are satisfied that Crawford does not compel a different result from a Travers analysis, and, as such, Appellant's argument fails.

¶ 24 Appellant asserts next that the trial court erred in admitting an edited videotape of the Stewart confession because the jury could have inferred, in conjunction with Appellant's confession identifying him as "the other guy," that, where edited, the tape referred to Appellant. We note that this issue is waived for purposes of our review. Neither a copy of the videotape nor a transcript of the videotape is present in the certified record. It is Appellant's responsibility to ensure that this Court is provided a complete certified record to ensure proper appellate review; a failure to ensure a complete certified record may render the issue waived. See Commonwealth v. Kennedy, 868 A.2d 582, 593 (Pa.Super.2005). Without the ability

to review the content of the videotape, we are without a basis to compare the videotape to the written confession.

¶ 25 Nevertheless, were we to address Appellant's argument, it would fail for the reasons set forth in our discussion of his first issue. Appellant's argument with regard to the videotape merely reiterates his "contextual implication" argument in a different fashion. Before the videotape was played to the jury, the trial court instructed the jury not to draw any inferences against Appellant or the Commonwealth on the basis that the videotape was edited. *See* N.T. Trial, 10/23/2003, at 95–96. The trial court reiterated this instruction in its general charge to the jury. *Id.,* 10/27/2003, at 146. Therefore, the trial court's instruction was sufficient to cure any prejudice accruing to Appellant from a "contextual implication" that arose in the minds of the jury as a result of the combination of the videotape and the written confession. *Travers,* at 366, 768 A.2d at 847. Accordingly, Appellant's argument fails.

¶ 26 Appellant next argues that the trial court erred by permitting Mr. Cenevivia to testify about a conversation he overheard between Appellant and Shakuur while the three were incarcerated in the Philadelphia County Prison. Questions regarding the admissibility of evidence are left to the sound discretion of the trial court, and, we, as an appellate court, will not disturb a trial court's ruling regarding the admissibility of evidence absent an abuse of that discretion. *See Gray,* 867 A.2d at 569–70.

¶ 27 Appellant contends that Mr. Cenevivia's testimony regarding Shakuur's statements was inadmissible because the statements did not fall under one of the enumerated exceptions to the hearsay rule. A review of Mr. Cenevivia's testimony regarding the conversation indicates that

Shakuur told Appellant that he did not wish to implicate Appellant as part of the robbery and murder but that Mr. Cenevivia was brought up from Florida to testify against Shakuur and, possibly, Appellant. Appellant responded to these statements by repeatedly stating to Shakuur that Shakuur had to say that Appellant was not involved with the crime.

¶ 28 As explained by the Commonwealth at the motion *in limine* hearing, Shakuur's statements were not hearsay because they were not offered for the truth of the matter, but, instead, they were offered as circumstantial evidence of the existence of the conspiracy between Appellant, Shakuur, and Stewart which had existed prior to the robbery of the bar. *Commonwealth v. Cassidy,* 315 Pa.Super. 429, 462 A.2d 270, 272 (1983). Although these statements were made after the completion of the conspiracy to rob the bar, they were still relevant to demonstrate that a conspirational relationship existed between Appellant, Shakuur, and Stewart. *Id.,* 462 A.2d at 272. As the statements were not hearsay, they were admissible.

¶ 29 A review of the record indicates that the jury was not informed of the Commonwealth's limited use of Shakuur's statements. However, while it is true that a jury must be informed of restrictions on the use of evidence, the burden rested on Appellant to request a limiting instruction to the jury regarding the restriction on use of the evidence. *See Commonwealth v. Johnson,* 457 Pa. 554, 559, 327 A.2d 632, 635 (1974). Appellant failed to request a limiting jury instruction, and, therefore, Appellant will not now be heard to complain regarding the jury's consideration of the evidence. *Id.,* at 559, 327 A.2d at 635. Accordingly, Appellant's argument fails.

¶ 30 Appellant also argues that these statements violated his Sixth Amendment Confrontation Clause rights. The Commonwealth argues that this issue is waived because Appellant failed to present it in his motion *in limine*. We disagree. In general terms, Appellant's motion *in limine* states that introduction of Shakuur's statements would violate his rights under the Confrontation Clause. Therefore, the issue is preserved for our review. *See Gray*, 867 A.2d at 574. Nevertheless, *Bruton* and *Crawford* are clearly inapplicable to the present case. As we have concluded that Shakuur's statements were not offered for the truth of the matter asserted, the concerns in *Bruton* and *Crawford* regarding conviction on the basis of hearsay confessions are not implicated in this case. *See Crawford*, 541 U.S. at 59, 124 S.Ct. 1354 (holding of *Crawford* applies only to "testimonial hearsay"); *see also Bruton*, 391 U.S. at 128 n. 3, 88 S.Ct. 1620 (indicating that statement of co-defendant was not admissible against Bruton under traditional hearsay exceptions); *Id.*, 391 U.S. at 135–36, 88 S.Ct. 1620. Accordingly, Appellant's argument fails.

¶ 31 Appellant's remaining contentions assert that trial counsel was ineffective for failing to preserve the following issues: (1) failing to object to the Commonwealth's identification of Appellant as "the other guy" described in Stewart's confession in the Commonwealth's summation to the jury; and (2) failing to request a limiting instruction for the jury's consideration of the conversation between Shakuur and Appellant. Generally, claims of ineffective assistance of counsel must be postponed until collateral review. *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). Recently, the Pennsylvania Supreme Court announced that ineffective assistance claims are not to be addressed by an appellate court on direct review, unless the following exceptions apply: (1) the ineffectiveness claims were presented to the trial court in the first instance; (2) a record devoted solely to the ineffective assistance claims was developed in the trial court; and (3) the trial court authors a full, discursive opinion on the ineffectiveness claims. *Commonwealth v. Dougherty*, 580 Pa. 183, 860 A.2d 31, 38 (2004); *see also Commonwealth v. Davido*, —— Pa. ——, —— n. 16, 868 A.2d 431, 441 n. 16 (to be addressed on direct appeal, record devoted solely to ineffective assistance claims must be developed in trial court; appellate courts may not rely on existing record coupled with trial court opinion to address ineffectiveness claims on direct appeal). Although presented to the trial court *via* Appellant's post-sentence motions, the above assertions of error on the part of trial counsel were not addressed by the trial court in a discursive opinion. Accordingly, we are bound to dismiss these claims without prejudice for them to be presented on collateral review. *Dougherty*, at 195, 860 A.2d at 38.[5]

---

5. Appellant urges this Court to address the merits of his ineffective assistance claims because the record is sufficient to allow review of these claims. In the past, we have addressed ineffectiveness claims on direct appeal where the record was complete for review and the trial court authored an opinion addressing the claims. *See Commonwealth v. Causey*, 833 A.2d 165 (Pa.Super.2003) (holding that *Grant* did not require dismissal of a claim that counsel was ineffective in failing to challenge sufficiency of the evidence where record was complete and the trial court drafted an opinion addressing this claim). Yet, even if we assume, *in arguendo*, that the hearing on the post-sentence motions suffices as a "record devoted" solely to the ineffective assistance claims, we are without benefit of an opinion from the trial court addressing the ineffectiveness claims in the first instance. Thus, the proper course is to defer Appellant's claims to collateral review so that a full record regarding Appellant's ineffective assistance claims may be developed, and the court

¶ 32 As Appellant's claims fail, are waived, or must be deferred until collateral review, we affirm the judgment of sentence of the trial court.

¶ 33 Judgment of sentence affirmed.

¶ 34 MONTEMURO, J. Concurs in the Result.

below may author an opinion addressing those claims.

