J-A19020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WELLS FARGO BANK, N.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| GORDON FISHER A/K/A GORDON DAVID FISHER A/K/A GORDON D. FISHER, INDIVIDUALLY T/D/B/A THE MAERLIN COMPANY, A SOLE PROPRIETORSHIP AND THE UNITED STATES OF AMERICA | |
| APPEAL OF: GORDON FISHER A/K/A GORDON DAVID FISHER A/K/A GORDON D. FISHER, INDIVIDUALLY T/D/B/A THE MAERLIN COMPANY, A SOLE PROPRIETORSHIP | No. 1405 WDA 2013 |

Appeal from the Judgment Entered October 10, 2013
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): MG-10-00943

BEFORE: BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                     **FILED OCTOBER 24, 2014**

Appellant, Gordon Fisher a/k/a Gordon David Fisher a/k/a Gordon D. Fisher, individually and t/d/b/a The Maerlin Company, a sole proprietorship, appeals from the judgment entered on October 10, 2013. We affirm.

The esteemed trial judge has provided us with a thorough and well-written explanation of the underlying facts in the case. We quote, in part, from the trial court's factual summary:

> On May 9, 1996, [Appellant] executed a promissory note in favor of Community Savings Bank in the principal sum of $310,000.00. Community Savings Bank is a purported predecessor in interest to Wells Fargo Bank, N.A., trustee [(hereinafter "Wells Fargo"). Wells Fargo is the underlying

* Former Justice specially assigned to the Superior Court.

p]laintiff in this matter, and the most recent of a series of assignees of the original note. [Also on May 9, 1996, Appellant] made, executed[,] and delivered a mortgage on real estate situated at 5124-5126 Westminster Place[,] in Pittsburgh, Pennsylvania, as collateral for the promissory note. . . .

According to the [a]mended [c]omplaint filed in this matter, beginning on October 1, 2005, [Appellant] failed to make any payments of principal and interest due under the note, the terms of which required monthly payments in the amount of $2,917.96 on a monthly basis from July 1, 1996 through June 1, 2011.

By order dated June 16, 2011, following argument, [the trial court entered] summary judgment in favor of [Wells Fargo] and against [Appellant] as to liability . . . , "with damages to be determined at a later date." Subsequently, by order dated June 13, 2012, [the trial court] denied a motion for an *in rem* judgment in favor of [Wells Fargo] in the amount of $464,139.77. The matter thereafter proceeded to trial solely on the matter of damages.

Trial Court Opinion, 11/21/13, at 1-2.

On the morning of trial, Appellant presented an oral pre-trial motion *in limine*, wherein Appellant sought to preclude the testimony of Wells Fargo's only witness in the case: Roger Martin. N.T. Trial, 5/28/13, at 4. At the time, Mr. Martin was the vice-president of the loan's servicing company, Rushmore Loan Management Services, LLC (hereinafter "Rushmore"). Further, before Mr. Martin was employed at Rushmore, Mr. Martin was employed by Quantum Servicing Corporation (hereinafter "Quantum"), which was the corporation that serviced the loan immediately prior to Rushmore. *See id.* at 24-25.

- 2 -

According to Appellant's motion *in limine*, Wells Fargo intended to call Mr. Martin as a witness primarily to authenticate various business records in the case (such as the loan and payment histories), pursuant to Pennsylvania Rule of Evidence 803(6). ***Id.*** at 5. Rule 803(6), entitled "Records of a Regularly Conducted Activity," provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6) (effective March 18, 2013).

Appellant anticipated that the business records would constitute Wells Fargo's sole evidence to prove the amount of damages it sustained from Appellant's default. Appellant claimed, however, that the loan and payment histories generated by Wells Fargo and its servicer, Rushmore, were based upon the business records of prior mortgagees and prior servicers of the loan. N.T. Trial, 5/28/13, at 5. Appellant argued that, since Mr. Martin was never employed by the prior banks, institutions, and servicers, Mr. Martin could not authenticate those prior business records under Rule 803(6); therefore, the prior loan and payment histories constituted inadmissible hearsay. *Id.* Appellant further argued that, since Rushmore's own loan and payments histories were based upon such inadmissible hearsay, Mr. Martin was incompetent to authenticate any and all loan and payment histories that Wells Fargo might proffer – even those generated by Rushmore itself. *Id.*

Specifically, Appellant argued:

> Our motion is based upon the fact that the sole witness in this case, who is [Mr. Martin] of [Rushmore], cannot authenticate the payment histories of the prior banks, institutions, and servicers, as exceptions under the business records exception to the hearsay rule. And since his value testimony is based upon those records, it's based upon inadmissible hearsay, and therefore would be inadmissible of itself.
>
> . . . This is not just a one or two assignment case. The mortgage went from Community Savings Bank to Three Rivers Bank and Trust. Three Rivers Bank and Trust merged with Sky Bank, Sky Bank merged with Huntington

[National] Bank. . . . Huntington assigned the mortgage to Roosevelt Mortgage Acquisition Company,[1] and Roosevelt Mortgage Acquisition Company assigned the mortgage to Wells Fargo, the plaintiff in this case.

There have been at least four mortgage servicers that we're aware of, Standard Mortgage Corporation, Huntington Mortgage Group, Quantum Servicing Corporation[,] and Rushmore Loan Management Services. We also, and I will have testimony if necessary to the effect that Sky Bank did its own servicing and that Standard Mortgage Corporation did its own servicing on this loan.

So we have at least four predecessor banks, at least three predecessor servicing companies. Since this witness must testify based upon the hearsay information received from those facilities and cannot overcome the hearsay rule, because he cannot qualify the documents for the business records exception, [Wells Fargo] cannot establish a *prima facie* case.

N.T. Trial, 5/28/13, at 4-6.

Moreover, Appellant cited to **Commonwealth Financial Systems v. Smith**, 15 A.3d 492 (Pa. Super. 2011), wherein a panel from this Court refused "to adopt the federal 'rule of incorporation[,]' which provides that the record a business takes custody of is 'made' by the [acquiring] business" for purposes of the business records exception to the hearsay rule. **Commonwealth Fin. Sys.**, 15 A.3d at 496 and 500. According to Appellant, since the **Commonwealth Financial Systems** Court refused to adopt the "rule of incorporation," neither Wells Fargo nor Rushmore could authenticate the loan and payment histories that were generated by third

_____

[1] Mr. Martin testified that Roosevelt Mortgage Acquisition Company is the parent company of Rushmore. N.T. Trial, 5/28/13, at 50.

parties – even if Wells Fargo and Rushmore integrated those histories into their own records and then relied upon those histories in the course of their businesses. N.T. Trial, 5/28/13, at 6-7.

The learned trial judge noted that the case was going to be tried non-jury. Therefore, the trial court deferred ruling on Appellant's hearsay objection until after the trial and declared that, in rendering its verdict, it would ignore any hearsay proffered by the parties. *Id.* at 7 and 11-12. The trial court thus denied Appellant's motion *in limine*, but granted Appellant a standing hearsay objection for all evidence that Wells Fargo presented during the trial. *Id.* at 7 and 10-12.

The non-jury trial then commenced. During the trial, Wells Fargo presented the testimony of Mr. Martin to authenticate a number of different business records, including Plaintiff's Exhibits 7, 9, and 11. We summarize the three exhibits below.[2]

_____

[2] We note that the exhibits introduced at trial were not contained in the certified record to this Court. Accordingly, we could have found the issues raised by Appellant to be waived, as it is Appellant's obligation to see that all pertinent documents filed with the trial court are contained within the certified record forwarded to the Superior Court. ***Commonwealth v. Whitaker***, 878 A.2d 914, 922-923 (Pa. Super. 2005) ("[i]t is [a]ppellant's responsibility to ensure that this Court is provided a complete certified record to ensure proper appellate review; a failure to ensure a complete certified record may render the issue [raised on appeal] waived"). Moreover, the fact that the exhibits may be part of the reproduced record is of no moment, as we look only to those documents contained within the certified record in rendering our decisions. ***McEwing v. Lititz Mut. Ins. Co.***, 77 A.3d 639, 644 n.2 (Pa. Super. 2013) ("[i]t is well-established that this Court may only consider items which have been included in the certified
*(Footnote Continued Next Page)*

Plaintiff's Exhibit 7 is a document that itemizes Appellant's loan history from 2003 until May 2013; included amongst the papers are business records from not only Rushmore and Quantum, but also from Huntington Mortgage Group and Sky Bank.

Plaintiff's Exhibit 9 is a document entitled "Payoff Statement;" the document is dated May 21, 2013, addressed to Appellant, and written on Rushmore letterhead. The document itemizes all of Rushmore's claimed damages and reads:

These figures are due to May 28, 2013.

This loan is due for the October 01, 2005 payment.

| | |
|---|---|
| The current total unpaid Principal Balance is: | $ 251,746.30 |
| Interest at 7.75000% | 151,022.35 |
| Escrow/Impound Overdraft | 82,847.24 |
| Recoverable Corporate Advances | 28,745.84 |
| Foreclosure Fees | 795.00 |
| Foreclosure Costs | 10.00 |

*(Footnote Continued)* ———————————

record and those items which do not appear of record do not exist for appellate purposes. The failure to include a document in the certified record is a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record") (internal quotations and citations omitted). However, rather than finding the issues waived, we contacted the trial court and we were able to obtain the exhibits which had been retained by the trial judge. We remind Appellant's counsel to be certain that all pertinent documents are contained within the certified record in any future appeals.

| | |
|---|---|
| Recon/Recording Fee | 160.00 |
| Property Inspection | 16.50 |
| * * TOTAL AMOUNT TO PAY LOAN IN FULL * * | 515,343.23 |

Plaintiff's Exhibit 9 at 1.

Plaintiff's Exhibit 11 is a document that itemizes Wells Fargo's claimed damages through May 28, 2013. The first page of the document declares that Wells Fargo's claimed damages total $514,361.73. The total figure was calculated by utilizing the loan and payment histories from Plaintiff's Exhibit 7, and adding taxes, insurance, fees, and costs to the principal balance and interest. *See* Plaintiff's Exhibit 11 at 1.

During trial, Mr. Martin testified that, with respect to Plaintiff's Exhibit 7, any record that originated from either Rushmore or Quantum: was made at or near the time of the acts and events appearing on the record; was made by a person with knowledge of or made from information transmitted by a person with knowledge of the acts and events appearing on it; was kept in the course of a regularly conducted business activity; and, was a record that either Rushmore or Quantum was in the regular practice of making. N.T. Trial, 5/28/13, at 24-27; *see also* Pa.R.E. 803(6). However, Mr. Martin admitted that he never worked for either Huntington Mortgage Group or Sky Bank and that he was not familiar with how the latter two corporations kept or prepared their records. N.T. Trial, 5/28/13, at 47-48.

Mr. Martin also authenticated Plaintiff's Exhibit 9 (the "Payoff Statement") as a business record and testified that the record: was made at

or near the time of the acts and events appearing on the record; was made by a person with knowledge of or made from information transmitted by a person with knowledge of the acts and events appearing on it; was kept in the course of a regularly conducted business activity; and, was a record that Rushmore was in the regular practice of making. *Id.* at 40.

Following Mr. Martin's testimony, Wells Fargo called Appellant as a witness, as though on cross. Appellant admitted that he did not make a mortgage payment in either 2012 or 2011. Appellant also testified that he attempted to make a mortgage payment in 2010 (which was after the default), but that the bank refused to accept payment. *Id.* at 82-83. The trial then concluded.

On May 30, 2013, the trial court entered its non-jury verdict, finding in favor of Wells Fargo and against Appellant in the amount of $514,361.73.[3]

Appellant filed a timely post-trial motion, wherein Appellant claimed that the trial court erred in admitting Plaintiff's Exhibits 7 and 11, as the documents contained inadmissible hearsay.[4] Moreover, Appellant claimed that the trial court erred in allowing Mr. Martin to authenticate Plaintiff's

_____

[3] The Allegheny County Department of Court Records noted that notice of the verdict was sent to the parties on May 31, 2013. Non-Jury Verdict, 5/30/13, at 1; Docket Entry, 5/30/13, at 1.

[4] Within the trial court's later-filed Rule 1925(a) opinion, the trial court declared that it had determined that the challenged evidence was not hearsay and that it was properly admitted into evidence. *See* Trial Court Opinion, 11/21/13, at 7-9.

- 9 -

Exhibits 7 and 11, as "Exhibit [7] contained loan histories prepared by Sky Bank and Huntington Mortgage Group [and] Mr. Martin admitted that he had no personal knowledge of how either Sky Bank or Huntington Mortgage Group prepared, stored or maintained their records" and Plaintiff's Exhibit 11 was simply based upon the calculations and loan histories contained in Plaintiff's Exhibit 7. Appellant's Post-Trial Motion, 6/10/13, at 3-6.

The trial court denied Appellant's post-trial motion and, on October 10, 2013, judgment was entered on the verdict. Appellant filed a timely notice of appeal and Appellant now raises the following two claims:

> 1. Did the [trial c]ourt err as a matter of law in relying on the testimony of Roger Martin to authenticate Plaintiff's Exhibit "7" and Plaintiff's Exhibit "11"?
>
> 2. Did the [trial c]ourt err as a matter of law in determining that Roger Martin met the requirements of Pa.R.E. 803(6) and [42 Pa.C.S.A. § 6108] for the purpose of admitting records under the business records exception to the hearsay rule?

Appellant's Brief at 4.

Appellant's claims on appeal challenge the trial court's admission of evidence. We have explained:

> Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

> To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. . . . A party suffers prejudice when the trial court's error could have affected the verdict.

*Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 100-101 (Pa. Super. 2011) (internal quotations and citations omitted); *see also B & L Asphalt Indus. v. Fusco*, 753 A.2d 264, (Pa. Super. 2000) ("[a]n evidentiary ruling which [does] not affect the verdict will not provide a basis for disturbing the fact-finder's judgment") (internal quotations, citations, and corrections omitted).

Appellant's claims on appeal are essentially identical. According to Appellant, the trial court erred in concluding that Mr. Martin was competent to authenticate Plaintiff's Exhibits 7 and 11; and, since Mr. Martin was not competent to authenticate Plaintiff's Exhibits 7 and 11, Appellant claims that the trial court erred in admitting and considering the two exhibits. Further, Appellant claims that Plaintiff's Exhibits 7 and 11 constitute the entirety of Wells Fargo's evidence regarding damages and that, "[w]ithout Plaintiff's Exhibit 7 and Plaintiff's Exhibit 11, Wells Fargo is unable to prove its case." Appellant's Brief at 15.

Appellant's claims on appeal do not entitle Appellant to a new trial. Indeed, even assuming, *arguendo*, that the trial court erred in admitting Plaintiff's Exhibits 7 and 11, the error would be harmless, as Plaintiff's Exhibits 7 and 11 are cumulative of Plaintiff's Exhibit 9 – and, on appeal, Appellant has not claimed that the trial court erred when it admitted

Plaintiff's Exhibit 9.[5]  Therefore, since Plaintiff's Exhibit 9 provided an independent basis for the trial court's damages award, and since Appellant does not claim that the trial court erred in admitting Plaintiff's Exhibit 9, Appellant's claims on appeal immediately, and necessarily, fail.[6]  ***See Blumer v. Ford Motor Co.***, 20 A.3d 1222, 1232 (Pa. Super. 2011) (holding that, even though the trial court erred in admitting certain reports, "the content of the inadmissible [r]eports was cumulative in nature to the admissible [r]eports and, consequently, the evidentiary error was harmless"); ***Potochnick v. Perry***, 861 A.2d 277, 282-283 (Pa. Super. 2004) (holding that, even if the trial court erred in excluding certain evidence, the error was harmless, as the proffered testimony was cumulative of other evidence); ***Reading Radio, Inc. v. Fink***, 833 A.2d 199, 216 (Pa. Super. 2003) (holding that the trial court erred in admitting evidence of prior settlements at trial; nevertheless, the error was harmless,

_____

[5] We note that Plaintiff's Exhibit 9 supports an even greater damages award than the trial court's actual verdict.  ***See*** Plaintiff's Exhibit 9 at 1 (calculating the total amount of damages as $515,343.23); Non-Jury Verdict, 5/30/13, at 1 (finding in favor of Wells Fargo and against Appellant in the amount of $514,361.73).

[6] We also note that Appellant does not argue on appeal that either Wells Fargo's damages calculation or the trial court's damages award was somehow incorrect or inaccurate.  Instead, Appellant's claim on appeal is a formal challenge to the admission of evidence.  Given this fact, and given the absence of any challenge to Plaintiff's Exhibit 9, Appellant essentially concedes on appeal that the allegedly erroneous admission of Plaintiff's Exhibits 7 and 11 did not affect the trial court's verdict.

as the appellant did not object to similar testimony at another point during the trial; therefore, since the erroneously admitted evidence was cumulative to other, unchallenged evidence in the case, the evidentiary error was harmless); *see also Shamis v. Moon*, 81 A.3d 962, 970 (Pa. Super. 2013) (Superior Court may affirm a trial court's decision on any grounds that are supported by the record).

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/24/2014