J-A13032-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ZACHARY SHIELDS, | : | |
| | : | |
| Appellant | : | No. 266 EDA 2018 |

Appeal from the Judgment of Sentence January 8, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004190-2017

BEFORE:     SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:     **FILED AUGUST 21, 2019**

Zachary Shields (Appellant) appeals from his judgment of sentence imposed following his two convictions under the Uniform Firearms Act: persons not to possess firearms, 18 Pa.C.S. § 6105, and possession of a firearm with an altered manufacturer's number, 18 Pa.C.S. § 6110.2. We affirm his judgment of sentence and deny his application for a remand for an evidentiary hearing.

Following Appellant's non-jury trial on the above charges, the trial court made the following factual findings.

> In December of 2016, Appellant was transferred to parole agent Erik Brown [(Agent Brown)] for supervision by the Pennsylvania Board of Probation and Parole. At this time, Appellant was required to reside at his address of record - with his grandmother in the Olney section of Philadelphia.
>
> Appellant was arrested on January 21, 2017, at which time Agent Brown began investigating Appellant's activities on North

*Retired Senior Judge assigned to the Superior Court.

Patton Street, Philadelphia, where Appellant's mother resided. Agent Brown discovered that Appellant had been spending most of his time in his mother's area, instead of his address of record, as required. Agent Brown spoke to Appellant to remind him that his mother's home was an inappropriate place for him to live.

On January 26, 2017, Agent Brown met with Appellant again, and administered a drug test. Appellant tested positive for benzodiazepines. As a result, Appellant was given an area restriction, "not to enter the area from Girard Avenue to Lehigh Avenue and from Broad Street West to the Schuylkill River at any time for any purpose." Additionally, Appellant was instructed to maintain a 9:00 [p.m.] to 9:00 [a.m.] curfew at his address of record.

On April 14, 2017, Appellant failed to appear at his address of record for a scheduled meeting, as required. As a result, Agent Brown assigned an electronic [global positioning system (GPS)] monitor[] to be worn on Appellant's leg. Appellant was told that he may visit his mother's house, but may not move there, nor loiter around North Philadelphia.

In the end of April of 2017, Agent Brown observed Appellant moving about North Philadelphia, particularly in the intersection of 23rd and Diamond. As an experienced parole officer and prior youth officer, Agent Brown knew that intersection to have a "lot of narcotics and gun violence."

On April 29[, 2017], Agent Brown went to Appellant's mother's residence [on] Patton Street. Appellant answered the door, and responded, "yeah, you know," when told by Agent Brown that it looked like Appellant had been staying at his mother's residence. There was another male at the house, upstairs, in the front bedroom. Agent Brown did not get any of that male's identifying information. Agent Brown asked Appellant to show him where he was staying, and told Appellant that he would need to take a urine test. Appellant then took Agent Brown upstairs, and confirmed the second-floor middle bedroom was his, after being asked "point blank" if it was. Appellant also confirmed that it was his "stuff" and sneakers in that bedroom. The bedroom was small, and had one twin bed.

During the conversation between Agent Brown and Appellant, Agent Brown observed the handle of a firearm in an ajar drawer at the top of a dresser. Agent Brown had previously seen firearms as both a parole agent and probation officer. The dresser was approximately five feet tall, directly in front of the door, and the top drawer was open about two or three inches. Prior to seeing the handle of the gun, Agent Brown did not manipulate the top drawer. Agent Brown did not do a whole search of the room.

Agent Brown handcuffed Appellant, went downstairs, and called the police. When the police arrived, Agent Brown pointed out the firearm, which the police took possession of, and took Appellant into custody. The firearm was an operable 22-caliber black Rohm RG7, loaded with four rounds. The barrel of the gun was shorter than it would normally be, and broken on the front.

Trial Court Opinion, 8/8/2018, at 2-4 (some comma use, capitalization, and titles altered; record citations omitted).

Additionally, per the stipulation of the parties, the Commonwealth introduced evidence showing that Appellant had a prior criminal conviction that rendered him ineligible to possess a firearm under section 6105 of the Uniform Firearms Act. N.T., 11/2/2017, at 43. Furthermore, while Appellant's mother testified that her nephew occasionally stayed in the middle bedroom that Appellant had identified as his, the trial court largely rejected her testimony as incredible since her testimony was contrary to the evidence showing the bedroom was occupied by Appellant only, as Appellant spent almost all of his time at his mother's house, and the room contained a twin bed and Appellant's belongings. *Id.* at 62-63.

The trial court found Appellant guilty of the two firearm-related crimes referenced *supra*. On January 8, 2018, the trial court sentenced Appellant in the aggregate to four to eight years of incarceration.

This timely-filed appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following issues on appeal.

A. Was not the evidence [in]sufficient to sustain the verdict on the two firearms charges, 18 Pa.C.S. § 6105 and 18 Pa.C.S. § 6110.2, because the uncontroverted testimony failed to establish that Appellant knowingly possessed a firearm where a second unknown male had access, motive, and opportunity to place a firearm in the area in which it was found?

B. Did not the trial court err in permitting the Commonwealth to introduce at trial Appellant's history of drug use, his probation violations, other criminal acts, and the nature of the location in which Appellant was located through a GPS monitor as [] the evidence is irrelevant, and its probative value, if any, is outweighed by its prejudicial effect?

C. Did not the trial court err by admitting records of and testimony relating to GPS location information because the evidence is hearsay as it contains an out[-]of[-]court statement used for the truth of Appellant's locations on certain dates and the Commonwealth did not satisfy any hearsay exceptions for its admissibility?

D. If Appellant's convictions are not vacated or discharged, should not this Court remand to the trial court pursuant to Pa.R.Crim.P. 720(C) for a hearing on after[-]discovered evidence … ?

Appellant's Brief at 4-5 (trial court's answers omitted).

J-A13032-19

**Sufficiency of the Evidence**

We begin with Appellant's first issue, which challenges the sufficiency of the evidence to sustain his two firearm-related convictions.[1] To address a challenge to the sufficiency of the evidence, we must determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding

---

[1] Technically, Appellant has waived any sufficiency challenge to 18 Pa.C.S. § 6110.2(a) by not including a reference to that statute and only including a reference to 18 Pa.C.S. § 6105(a)(1) in his original concise statement and supplemental concise statement. In fact, Appellant concedes this and filed a petition with this Court, wherein, *inter alia*, he requested that this Court accept a second supplemental concise statement, which included a sufficiency challenge to 18 Pa.C.S. § 6110.2(a). In support of his request, Appellant noted that the element he is challenging is the same under both statutes, the trial court addressed his challenge under both statutes, and the omitted reference to 18 Pa.C.S. § 6110.2(a) was the result of counsel's inadvertent error in submitting an incorrect version of the concise statement to the trial court. We denied Appellant's petition "without prejudice to Appellant's right to again raise the issue in the petition in a newly filed application that may be filed after the appeal has been assigned to the panel of this Court that will decide the merits of the appeal." Order, 11/20/2018, at 1. Appellant did not re-raise the issue or file a new application. Therefore, we are constrained to find waiver of his sufficiency challenge to 18 Pa.C.S. § 6110.2(a). However, we will also conduct an alternative analysis because Appellant's case is rather straightforward, his sufficiency claim is premised upon the same element in two similar statutes, and the trial court addressed both claims. *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (finding this Court should have addressed an appellant's sufficiency claim in a "relatively straightforward … case [and] the common pleas court readily apprehended [a]ppellant's claim and addressed it in substantial detail").

- 5 -

a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

In order to prove that Appellant violated section 6105 of the Uniform Firearms Act, the Commonwealth had to prove that Appellant had been convicted of an offense enumerated in the statute and that he possessed a firearm in this Commonwealth. 18 Pa.C.S. § 6105(a)(1). In order to prove that Appellant violated section 6110.2 of the Uniform Firearms Act, the Commonwealth had to prove that Appellant possessed "a firearm[,] which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated." 18 Pa.C.S. § 6110.2(a).

Both statutes have a common element of possession, which is the only element Appellant disputes with respect to his sufficiency claim. Specifically, he argues that while it is possible that the gun Agent Brown saw in the open drawer belonged to him because it was in his room at his mother's house, the Commonwealth's evidence equally supports a conclusion that it belonged to the unknown man on the second floor referenced by Agent Brown in his testimony. Appellant's Brief at 19-24. Relying upon the "equipoise doctrine" discussed in ***In the Interest of J.B.***, 189 A.3d 390 (Pa. 2018), Appellant

argues that competing reasonable inferences show that the gun could have belonged to either Appellant or the unknown man, rendering the Commonwealth's evidence insufficient to establish Appellant's possession of the gun beyond a reasonable doubt. Appellant's Brief at 20-24. In Appellant's view, even when viewing all evidence in the light most favorable to the Commonwealth, a factfinder would have had to guess who possessed the gun. *Id.* He emphasizes that he welcomed Agent Brown into the home, showing a lack of consciousness of guilt; Agent Brown saw the man emerge from the front bedroom upstairs in a concerning manner; the gun was placed in a spot where it could be quickly discarded by a passerby; and the Commonwealth did not test the gun for fingerprints or DNA. *Id.* at 22-23.

We begin our analysis by reviewing the law regarding possession. Because Appellant was not in actual possession of the firearm, the Commonwealth needed to prove that he had constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

*Commonwealth v. Parrish*, 191 A.3d 31, 36-37 (Pa. Super. 2018) (quotation marks and citations omitted).

Here, Appellant answered the door when Agent Brown arrived. N.T., 11/2/2017, at 26. He responded, "[y]eah, you know," when Agent Brown told him the GPS information indicated he had been staying at his mother's house all of the time. *Id.* Appellant showed Agent Brown the second-floor middle bedroom, identified it as his bedroom, and pointed to items in the room as his belongings. *Id.* at 26-27. The room contained men's clothing and shoes that looked to Agent Brown like they were worn by a "young guy" like Appellant. *Id.* at 28. The room was small and had only one small twin bed and a dresser. *Id.* at 27-29. The dresser's top drawer was ajar, with the handle of the gun protruding upwards. *Id.* After Appellant was placed under arrest, he requested to retrieve a different pair of shoes and pants from the second-floor middle bedroom. *Id.* at 30-31.

Based on the totality of the circumstances, and viewing the evidence and the inferences drawn from that evidence in the light most favorable to the Commonwealth, one can reasonably infer that Appellant exercised dominion and control over the gun because it was in a drawer in a bedroom, which was an area of the home he solely occupied and over which he exercised dominion. *See Commonwealth v. Walker*, 874 A.2d 667, 678 (Pa. Super. 2005) (concluding that there was sufficient evidence to establish Walker exercised conscious dominion and control over contraband found in basement, which had a bathroom, a bedroom with men's clothes, and an office with mail addressed to Walker and the contraband; further, after being placed under arrest, Walker requested to retrieve a shirt and shoes from the basement bedroom and admitted he resided there).

We reject Appellant's contention that the equipoise doctrine applies in this case. The equipoise doctrine is based on the premise that "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty." *Commonwealth v. Woong Knee New*, 47 A.2d 450, 468 (Pa. 1946).

In the case cited by Appellant, *J.B.*, our Supreme Court examined the sufficiency of the evidence produced by the Commonwealth in support of the

conviction of an eleven-year-old boy for murdering his stepmother. The Court concluded that

> all of the Commonwealth's forensic and eyewitness testimony, and all reasonable inferences derived therefrom, viewed in a light most favorable to it, was, at best, in equipoise, as it was equally consistent with two possibilities: first, that a person or persons unknown entered the house in which J.B.'s stepmother was sleeping and shot her to death …; second, the Commonwealth's theory that … J.B. … shot [his stepmother] in the back of the head …. The Commonwealth's evidence was, therefore, insufficient as a matter of law to overcome [J.B.'s] presumption of innocence, and the juvenile court's adjudication of his delinquency for these serious crimes must be reversed. *See Woong Knee New*, 47 A.2d at 468 ("When a party on whom rests the burden of proof in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he proves neither."); [*Commonwealth v.*] *Tribble*, 467 A.2d [1130,] 1132 [Pa.] 1983) ("[S]ince the testimony presented by the Commonwealth to establish appellant's guilt is at least equally consistent with appellant's innocence, there is insufficient evidence to sustain appellant's conviction.").

*J.B.*, 189 A.3d at 421-22.

In the instant case, Appellant argues that the unknown man referenced by Agent Brown could have discarded the gun in Appellant's dresser drawer before Agent Brown and Appellant came upstairs. The record reveals the following regarding the unknown man. Agent Brown testified that he spoke to Appellant for a minute or two prior to their going upstairs, when Agent Brown learned there was another man present upstairs. N.T., 11/2/2017, at 31-32. The man was in the front bedroom, not Appellant's bedroom. *Id.* at 35. Of this man, Agent Brown stated, "[h]e was upstairs – I don't know if I want to call it hiding. But he was upstairs in

a way that was of concern to me." *Id.* Agent Brown never learned the man's identity. *Id.* The man left the premises when asked to do so by Agent Brown. *Id.*

While it is certainly possible that the man on the second floor discarded a gun in Appellant's dresser drawer, we cannot agree with Appellant that the possibility is equally consistent with Appellant's possession. The man was in a completely different room when Agent Brown and Appellant arrived upstairs, and there is nothing in the record reasonably suggesting that the man discarded the gun. As noted *supra*, "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Gonzalez*, 109 A.3d at 716; *see also Commonwealth v. Muniz*, 5 A.3d 345, 349 (Pa. Super. 2010) (noting the trial court, sitting as factfinder, was entitled to reject the possibility that another person placed drugs in Muniz's room without Muniz's knowledge and such rejection bound this Court given our standard of review), *abrogated on other grounds*. Accordingly, we conclude that the Commonwealth's evidence was sufficient to establish Appellant's possession of the firearm beyond a reasonable doubt.

**Evidentiary Issues**

In Appellant's second and third issues, he objects to the trial court's admission of evidence he contends was irrelevant, prejudicial, and/or hearsay. Appellant's Brief at 24.

Our standard of review for the admission of evidence is well-settled.

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.
>
> To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. An evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.

**Commonwealth v. Manivannan**, 186 A.3d 472, 479-80 (Pa. Super. 2018) (citations and quotation marks omitted).

Relying on relevance and prejudice grounds, Appellant challenges the introduction of evidence relating to four topics: (1) Appellant's unrelated arrest in January 2017; (2) Appellant's positive drug screen in January 2017; (3) Appellant's violations of parole in the days leading up to his arrest; and (4) descriptions of the area Appellant was frequenting as being known for narcotics and drug violence. Appellant's Brief at 24. Appellant

also claims the GPS data records from his electronic home monitor and testimony relating to those records was hearsay, which was erroneously admitted without an applicable exception. *Id.*

By way of background, the record reveals the following. At trial, the Commonwealth asked Appellant's parole officer if he was aware of contact between Appellant and the police on January 21, 2017, which was three months before Agent Brown made his home visit and discovered the gun. After Appellant objected on relevancy and prejudice grounds, the trial court observed that "we did most of this on a motion to suppress." N.T., 11/2/2017, at 13. The Commonwealth's attorney asserted he was not looking for specifics. *Id.* The trial court stated, "It's my understanding [Appellant] was arrested in January of 2017." *Id.* The Commonwealth's attorney responded in the affirmative. The trial court then asked the witness, "And you investigated as a result of that arrest, correct?" *Id.* Agent Brown responded affirmatively.

Shortly after questioning Agent Brown about the January 21, 2017 arrest, the Commonwealth inquired what if anything Agent Brown learned during a meeting with Appellant on January 26, 2017. *Id.* at 16. Agent Brown responded by stating that Appellant was positive for benzodiazepines on that date. *Id.* Appellant's counsel again objected on relevancy and prejudice grounds, noting that the drug test occurred three months before the April home visit. *Id.* The Commonwealth responded by stating that it

- 13 -

was relevant to explain "the course of conduct of how and why the agent does what he does moving forward," particularly in light of the anticipated credibility challenge counsel believed Appellant would present. *Id.* The court overruled the objection.

Later in the trial, the Commonwealth introduced evidence that Appellant failed to comply with the terms and conditions of his probation. *Id.* at 21-25. Specifically, he failed to meet Agent Brown at his address of record, resulting in Appellant being required to wear an electronic GPS monitor on his leg. Appellant was permitted to visit his mother's house, but Agent Brown's supervisor specifically forbid Appellant from staying there. The GPS records show that Appellant only stayed at his address of residence two times after being assigned the monitor. Instead, according to the records, he went back and forth between "high-crime areas" in North Philadelphia and his mother's house. *Id.* at 23. Agent Brown testified he was concerned Appellant was frequenting North Philadelphia, particularly the intersection of 23rd and Diamond streets, because it is known for a lot of narcotics and gun violence. Appellant lodged relevancy and prejudice objections to the testimony regarding Appellant's failure to meet with the probation officer, the results of the GPS tracking, and Agent Brown's description of the intersection as being known for narcotics and drug violence, but the trial court overruled his objections. *Id.* at 21, 23.

**a. Other Bad Acts Evidence**

Appellant argues that the evidence of his January 2017 arrest, January 2017 positive drug screen, and failure to comply with his probation conditions is irrelevant and prejudicial. According to Appellant, each of these things is evidence of a prior crime, wrong, or other act that was improperly admitted pursuant to Pa.R.E. 404(b) to prove that he had the propensity to possess a gun illegally. In Appellant's view, the case should have been simple: Agent Brown came to his mother's house; Agent Brown saw a gun; and either Agent Brown or his mother's testimony was more credible on the issue over whether Appellant had control and dominion over the bedroom and the gun. Instead, Appellant argues, the Commonwealth relied upon his supposed propensity to commit crimes to prove its case. Appellant's Brief at 24-31.

"Evidence is admissible if it is relevant - that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact - and its probative value outweighs the likelihood of unfair prejudice." ***Commonwealth v. Hicks***, 156 A.3d 1114, 1125 (Pa. 2017); Pa.R.E. 401-03. "Evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***See also*** Pa.R.E. 404(b)(1) (prohibiting introduction of "[e]vidence of a crime, wrong, or other act" in order "to prove a persons' character"). This type of "evidence may be

admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Hicks***, 156 A.3d at 1125.  For example, bad acts evidence may be introduced to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).  However, in a criminal case, evidence of prior bad acts is admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice." ***Id.***  "As the comment to Rule 403 instructs, '[u]nfair prejudice means a tendency to suggest decision on an improper basis or to divert the [factfinder's] attention away from its duty of weighing the evidence impartially.'" ***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014) (quoting Pa.R.E. 403 cmt.).

The Commonwealth justifies the introduction of the evidence[2] by its need to tell the story of the case, which according to the Commonwealth

---

[2] For its part, the trial court offers minimal analysis of Appellant's evidentiary challenges, and its analysis of each is largely the same.  The trial court first states that it used its "judicial expertise" to ignore the evidence.  Trial Court Opinion, 8/8/2018, at 5-10.  The trial court then holds that the admission of the evidence was harmless error, because the evidence is irrelevant and not prejudicial because Agent Brown testified he found a gun in Appellant's drawer.  ***Id.***  We are perplexed by the trial court's analysis.  Notwithstanding the presumption attributed to judges in bench trials discussed *infra*, we question why the trial court admitted the evidence if it was not relevant and the trial court ignored all of it.  However, because "[w]e are not limited by the trial court's rationale and may affirm its decision on any basis," we ultimately affirm for the reasons explained *infra*.  ***Commonwealth v. Cramer***, 195 A.3d 594, 607 (Pa. Super. 2018).

starts with Appellant's inability to comply with his parole conditions, which led to increased scrutiny by Agent Brown and the agent's eventual discovery of the gun. Commonwealth's Brief at 18. The Commonwealth maintains that the evidence fell within the *res gestae* exception.[3] ***Id.*** at 19 (citing ***Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa. Super. 2004) ("Evidence of prior bad acts is … admissible where the particular crime or act was part of a chain, sequence, or natural development of events forming the history of the case.")).

As bad acts, Appellant's arrest, positive drug screen, and failure to abide by parole conditions were inadmissible against Appellant absent an exception. The Commonwealth is correct that despite the *res gestae* exception not being listed as an exception in Rule 404, our courts do not require the Commonwealth to present a case with such bare bones that the presentation appears to be in a vacuum. ***Commonwealth v. Dillon***, 925 A.2d 131, 39 (Pa. 2007). However, the *res gestae* exception is not a license for the Commonwealth to admit any evidence it wants. There must be a close interconnectedness between the bad act and the charged crime, such

---

[3] The Commonwealth also claims introducing the positive drug screen was necessary to rebut a portion of Appellant's closing argument that suggested that Agent Brown was lying about Appellant's possession of the gun, insomuch as the earlier parole violations without revocation of parole demonstrate that Agent Brown was not out to get Appellant. ***Id.*** at 20. Although the Commonwealth does not clarify, we presume the Commonwealth means it offered the evidence in anticipation of Appellant's closing argument.

that one could say that "the bad acts are part of the same transaction involving the charged crime." **Commonwealth v. Brown**, 52 A.3d 320, 332 (Pa. Super. 2012). In fact, the acts must be "so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." **Id.** at 330-31 (quoting **Commonwealth v. Coles**, 108 A. 826, 827 (Pa. 1919)) (emphasis removed).

Upon review, we conclude that the arrest and positive drug screen three months earlier were not part of the same transaction involving the charged crimes of gun possession. The case would not have been unintelligible if the Commonwealth simply began the story with Agent Brown's arrival at the house of Appellant's mother, and had Agent Brown testify that he had been monitoring Appellant as part of his duties as a parole officer. It was not necessary to review the entirety of Agent Brown's investigation – unless, of course, to prove that Appellant had the propensity to commit a crime. In fact, the Commonwealth does not disguise its attempts to use Appellant's prior bad acts to persuade the trial court that Appellant must have possessed and altered the gun. N.T., 11/2/2017, at 61 (Commonwealth's closing argument) ("So for a guy who is not following any of the rules the agent set forth, does it corroborate the fact that he has a

gun with sort of no visible identifiers and is sort of altered in a way that would make it easy to conceal and carry?").

The violation of the residency requirement is a closer call. Arguably, such information was relevant to explain why Agent Brown came to the home of Appellant's mother that day and asked Appellant to show him his room. Yet it is questionable whether such events were so interconnected as to be inseparable from the relevant narrative, and as noted *infra*, the Commonwealth could have provided background without going into as much detail. We conclude that it was within the trial court's discretion to have concluded that the admission of such evidence met the *res gestae* exception and was relevant. In addition, even if this evidence was not outside the scope of *res gestae*, the violations of Appellant's residency requirement were relevant to another purpose that was permissible under Pa.R.E. 402(b): proving Appellant had dominion and control over the bedroom where the gun was found.

While Appellant's violation of the residency requirement is no doubt prejudicial to Appellant, it is not unfairly so and does not outweigh the probative value of the information. Pa.R.E. 402(b)(2). This is particularly the case because Appellant waived his right to a jury trial and opted to be tried in a bench trial by the same trial judge who presided over the suppression hearing. As such, the trial court was already aware that Appellant had violated the residency requirement from the suppression

hearing. Furthermore, "it is presumed that a trial court, sitting as fact-finder, can and will disregard prejudicial evidence." **Commonwealth v. Fears**, 86 A.3d 795, 819 (Pa. 2014) (citation omitted).

While the trial court erred by permitting references to his January 2017 arrest and positive drug screen under the *res gestae* exception, such error was harmless.[4] Once again, the trial judge was already aware of the January 2017 arrest and positive screen from the suppression hearing. Indeed, it was the trial judge who noted the January 2017 arrest in an effort to broker the dispute between counsel regarding the relevancy of the Commonwealth's question. The fact that Appellant violated his probation

_____

[4] We use the following standard to evaluate whether an evidentiary issue is harmless.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

> An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict.

**Commonwealth v. Yockey**, 158 A.3d 1246, 1254 (Pa. Super. 2017) (citing **Commonwealth v. Chmiel**, 889 A.2d 501, 521 (Pa. 2005) (quotation marks omitted)).

was already entered into evidence for a legitimate purpose, and the gun was found in Appellant's bedroom, which was, for the reasons explained *supra*, in his domain and control. Thus, we are convinced beyond a reasonable doubt that the trial court's error could not have contributed to the verdict.

### b. Characterizations of the Neighborhood

Next, Appellant takes issue with Agent Brown's testimony that Agent Brown was concerned that the GPS tracker showed Appellant traveling to the intersection of 23rd and Diamond streets, which Agent Brown described as being known for a lot of narcotics and guns. Appellant's Brief at 28-29. Appellant assails this testimony as irrelevant. **Id.** at 28 (citing **Commonwealth v. Middleton**, 409 A.2d 41, 43 (Pa. Super. 1979) (holding that a description of an area as high crime was irrelevant)). He also claims the evidence was prejudicial and was admitted only to show Appellant must have possessed the gun since he was hanging out at an intersection known for guns. **Id.** at 29.

Both the trial court and the Commonwealth suggest Appellant waived this argument by not objecting during the Commonwealth's direct examination of Agent Brown. The relevant exchange is as follows.

Q. Was there any area in particular that you saw [Appellant] travel to that concerned you?

A. Yes. 23rd and Diamond.

Q. And 23rd and Diamond, that intersection, what about it concerned you?

[Appellant's counsel:] Your Honor, objection to relevance.

[Commonwealth's attorney:] This is relevant to why the agent makes the decision that he does. It's going to be relevant as to why he would sort of investigate [Appellant's] actions the way that he did.

[Trial Court:] I'll allow him to give some testimony so the Court can determine if it's relevant.

Q. 23rd and Diamond, do you have experience with that particular intersection?

A. Yes.

Q. And what is your experience with that intersection?

A. It's known for a lot of narcotics and gun violence.

Q. If we could use [Exhibit] C-6 as an example.

[Trial Court:] Why is this particularly relevant to [Appellant]?

[Commonwealth's attorney:] Because it signals that he's actually violating –

[Trial Court:] I'm asking him.

[Commonwealth's attorney:] Oh, I apologize.

[Agent Brown:] Well for two reasons. One, because he has a history of drug arrests in that area.

[Defense counsel:] Objection. Your Honor, I'm going to move for a mistrial.

[Commonwealth's attorney:] Your Honor, sitting as the fact-finder, can make a determination more so than a jury of 12 people might, and you can set aside –

[Trial Court:] I will strike and disregard that.

N.T., 11/2/2017, at 24-25.

While the trial court and the Commonwealth are correct that Appellant's counsel did not specifically object to the question that prompted Agent Brown's response regarding narcotics and gun violence, such characterization is slicing the bologna too thin under these circumstances. Appellant's counsel objected to the initial question, but the trial court permitted the Commonwealth to expound further. In context, it is clear that Appellant's objection stood, and we decline to find waiver.

At trial, the Commonwealth claimed it was offering the information to explain why Agent Brown investigated Appellant. But the reason why Agent Brown was investigating Appellant relates to potential probation violations by Appellant, not Agent Brown's later discovery that Appellant possessed a firearm. Therefore, we conclude that this information was irrelevant and the trial court erred in permitting the evidence to come in. Nevertheless, we find that its entry in this particular case was harmless error. Shortly before Agent Brown described the particular intersection as being known for narcotics and gun violence, he testified that Appellant was "moving about North Philadelphia in high-crime areas," causing Agent Brown concern. N.T., 11/2/2017, at 23. Appellant did not object to this testimony. Since the trial court was already aware that Appellant was frequenting these areas, learning that he was at a specific intersection with a reputation for narcotics and gun violence was only marginally more prejudicial. Furthermore, the

trial court heard this same information at the suppression hearing. Therefore, we conclude that the trial court's error could not have contributed to the verdict.

### c. Hearsay objection to GPS tracking data

Appellant argues that the GPS reports from the electronic-home-monitoring device he was required to wear were hearsay and improperly admitted. Appellant's Brief at 32. According to Appellant, the reports "convey a statement by some unknown person, and likely entered into the report, that the information contained therein relates to the location of the monitor attached to Appellant" in order to prove that he was staying at his mother's house between April 26 and April 29, 2017. *Id.* In Appellant's view, while the records could satisfy the business-record exception to hearsay set forth at Pa.R.E. 803(6), the Commonwealth failed to lay the necessary foundation to support the admission of the records. *Id.* at 33-35.

When the Commonwealth asked Agent Brown what he observed from accessing Appellant's GPS records, Appellant's counsel objected on multiple grounds, including hearsay, relevance, and prejudice. N.T., 11/2/2017, at 21. In reply, the Commonwealth mentioned that the Commonwealth had a printout from the GPS monitor that Agent Brown reviewed, and started to defend the relevancy of the question. The trial court interrupted twice, stating, "If you have documentation, I will allow it." *Id.* at 21-22.

The trial court did not explicitly rule on Appellant's hearsay objection at trial or address Appellant's hearsay issue in its Rule 1925(a) opinion. On appeal, the Commonwealth contends that Appellant objected only to the initial question, and not to the admission of the GPS records. Although the Commonwealth and Appellant universally contend that the GPS records were admitted, the notes of testimony reflect only that the Commonwealth showed the witness the documents. *Id.* It is possible that in context, it was clear to the parties at trial that the trial court intended to permit the Commonwealth to admit the GPS records by its statement, but it is not clear from the cold record. Furthermore, the certified record does not contain any of the exhibits admitted at trial. "It is Appellant's responsibility to ensure that this Court is provided a complete certified record to ensure proper appellate review; a failure to ensure a complete certified record may render the issue waived." *Commonwealth v. Whitaker*, 878 A.2d 914, 922 (Pa. Super. 2005).

The lack of clarity over the records' admission prevents us from finding waiver for failure to object as the Commonwealth urges, but it also constrains us from addressing Appellant's hearsay argument on appeal. Appellant focuses almost all of his argument on his claim that the records do not satisfy the business-records exception to the hearsay rule. However, there is no need to satisfy an exception if the records are not hearsay in the first place.

Appellant provides only a cursory analysis of whether the records are hearsay, and does not cite to any case law. *See* Appellant's Brief at 32. "Hearsay is 'a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.'" ***Commonwealth v. Fitzpatrick***, 204 A.3d 527, 532 (Pa. Super. 2019) (citing Pa.R.E. 801(c)). The Rules of Evidence define a statement as "a **person**'s oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a) (emphasis added).

Although it appears to be an issue of first impression in Pennsylvania, some federal and state courts have ruled that GPS data cannot be hearsay because it is not an assertion made by a person. ***See, e.g.***, ***United States v. Lizarraga-Tirado***, 789 F.3d 1107 (9th Cir. 2015) (holding that GPS coordinates automatically generated by Google Earth program are not hearsay because a computer makes the assertion, not a person); ***People v. Rodriguez***, 16 Cal.App.5th 355 (Cal. Ct. App. 2017) (holding GPS data generated by defendant's ankle monitor was not hearsay under California Evidence Code because it was not a statement of a person and was reliable); ***Wisconsin v. Kandutsch***, 799 N.W.2d 865 (Wis. 2011) (distinguishing between computer-stored and computer-generated data and concluding GPS data from electronic home monitoring device was computer-generated data and thus, not hearsay); ***see also United States v. Khorozian***, 333 F.3d

498 (3d. Cir. 2003) (holding that date stamp on fax was not hearsay because "[u]nder F.R.E. 801(a),[5] a statement is something uttered by 'a person,' so nothing 'said' by a machine … is hearsay" (citing 4 Mueller & Kirkpatrick, **Federal Evidence** § 380, at 65 (2d. ed. 1994)); **but see Channell v. Florida**, 200 So.3d 247 (Fla. Dist. Ct. App. 2016) (holding "bracelet gone" alerts received by probation officer from GPS monitoring company from defendant's ankle monitor were hearsay); **North Carolina v. Gardner**, 769 S.E.2d 196 (N.C. Ct. App. 2014) (evaluating GPS data under business records exception without discussing whether GPS data constitutes hearsay).

Appellant's failure to develop the predicate question under Rule 801 – *i.e.*, is GPS data even hearsay – results in our inability to resolve his argument regarding the applicability of the business-records exception. This Court will not act as counsel and develop arguments on behalf of an appellant. Instead, we may find waiver if the lack of development impedes meaningful review. **Commonwealth v. Pew**, 189 A.3d 486, 489 (Pa. Super. 2018). Not only is Appellant's failure to analyze whether the GPS data is a statement problematic given that it is an issue of first impression within this Commonwealth and unsettled elsewhere, his failure to ensure that the GPS records were transmitted to this Court also hinders our ability

---

[5] "Pa.R.E. 801(a), (b) and (c) are identical to F.R.E. 801(a), (b) and (c)." Pa.R.E. 801, Comment.

to analyze whether the information was computer-generated and reliable. Therefore, we conclude that Appellant has waived this issue concerning hearsay based upon his failure to develop the claim in his brief and his failure to ensure that the certified record is complete. *See Pew*, 189 A.3d at 489; *Whitaker*, 878 A.2d at 922.

## After-Discovered Evidence

Appellant's final claim relates to after-discovered evidence. Prior to filing his brief in this Court, Appellant filed an application with this Court, seeking permission to raise the issue in his brief and in the alternative to remand for an evidentiary hearing pursuant to Pa.R.Crim.P. 720. He also included the issue in his brief. Appellant's Brief at 37-40. Appellant claims that on November 5, 2018, his appellate counsel learned of evidence that proves that Appellant is innocent of possessing a firearm with an altered manufacturer's number.

By way of background, to prove that the firearm found in Appellant's room had a serial number that was "altered, changed, removed or obliterated," 18 Pa.C.S. § 6110.2, the Commonwealth introduced a ballistics report completed by the Philadelphia Police Department Firearms Identification Unit. N.T., 11/2/2017, at 42-43; Commonwealth Exhibit C-

16.[6] On the report, the section labeled "serial" contains the word "none." Commonwealth Exhibit C-16. Appellant asserts that "[t]he parties were led to believe at trial that this notation meant that the firearm had an altered or missing serial number sufficient to meet one of the elements of [s]ection 6110.2." Petition to Promptly Notify the Court of Newly Discovered Evidence, 11/16/2018, at ¶ 5. In support of this citation, he points to an argument to this effect made by the Commonwealth during its closing argument. *Id.*

On November 5, 2018, during the pendency of this appeal, Appellant's appellate counsel asserts that he contacted Philadelphia Police Officer Ronald Whiteman of the Philadelphia Police Firearms Identification Unit, the co-examiner on the firearms report introduced as Commonwealth Exhibit C-16. *Id.* at ¶ 6. According to Appellant's appellate counsel, Officer Whiteman told him that the word "none" meant there was no serial number on the gun, not that the number had been removed; that it was a "blank gun;" and most blank guns do not have serial numbers on them.[7] *Id.* If this Court remanded to the trial court for an evidentiary hearing, Appellant indicated that he planned to call Officer Whiteman to testify to the same. *Id.*

---

[6] Commonwealth Exhibit C-16 is not contained in the certified record, although the cited notes of testimony indicate that it was admitted at trial. Appellant attached the exhibit to his application for remand. We rely on it only to provide context to Appellant's arguments.

[7] Appellant does not explain what a "blank gun" is.

"A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720. At a minimum, the "motion must … describe the evidence that will be presented at [an evidentiary] hearing" in support of the motion. *Commonwealth v. Castro*, 93 A.3d 818, 827-28 (Pa. 2014). "[A]fter-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]" Pa.R.Crim.P. 720, Comment.

> To obtain a new trial based on after-discovered evidence, the defendant must prove, by a preponderance of the evidence, that the evidence: (1) could not have been obtained before the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

*Commonwealth v. Murray*, 174 A.3d 1147, 1153-54 (Pa. Super. 2017). "The proposed new evidence must be 'producible and admissible.'" *Commonwealth v. Griffin*, 137 A.3d 605, 608 (Pa. Super. 2016) (citing *Commonwealth v. Chamberlain*, 30 A.3d 381, 414 (Pa. 2011)).

In the instant case, Appellant did not aver any facts demonstrating that he would be able to prove Officer Whiteman's testimony was not available with the exercise of due diligence prior to the conclusion of trial.[8]

---

[8] Nor do we agree that Officer Whiteman's statements conclusively establish Appellant's innocence. His testimony to that effect certainly may have helped establish that the firearm did not have a "manufacturer's number

*(Footnote Continued Next Page)*

Appellant simply avers that his appellate counsel called Officer Whiteman on the telephone; he offers no explanation as to why his trial counsel could not have done the same thing. Officer Whiteman is listed as the co-examiner on the firearms report. Commonwealth's Exhibit C-16. The other examiner listed on the report, Officer John Cannon, did not testify at trial because Appellant's trial counsel stipulated to his testimony and the entry of the ballistics report. N.T., 11/2/2018, at 43.

If Appellant's trial counsel did not investigate adequately the statement on the ballistics report, Appellant may have grounds to pursue an ineffective-assistance-of-counsel claim through Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. But at this juncture, based upon his averments in his motion, he is not entitled to an evidentiary hearing and trial court determination of whether a new trial is warranted.

## Conclusion

In sum, the evidence was sufficient to prove beyond a reasonable doubt that Appellant possessed the firearm; the admission of the January 2017 arrest, January 2017 drug screen, and description of the intersection of

*(Footnote Continued)* —————

integral to the frame or receiver," 18 Pa.C.S. § 6110.1, and that Appellant therefore did not alter, change, remove, or obliterate the number. But, as the Commonwealth points out, the barrel of the firearm was shortened by 7/8 of an inch, so it is possible that the severed portion contained the serial number. Thus, whether Appellant could prove that he likely would have received a different verdict is unclear.

23rd and Diamond streets was erroneous, but harmless; the violations of his residency requirement were admitted for non-propensity purposes and their prejudicial effect did not outweigh their probative value; Appellant waived the issue of whether the GPS data records were inadmissible hearsay; and Appellant is not entitled to an evidentiary hearing on his after-discovered evidence claims because he did not aver any facts establishing that the evidence could not have been found with due diligence before the conclusion of trial.  Therefore, we affirm Appellant's judgment of sentence and deny his application for a remand for an evidentiary hearing.

Judgment of sentence affirmed.  Application denied.

Judge Shogan joins in this memorandum.

Judge Nichols concurs in the result.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*

*Prothonotary*

*Date: 8/21/2019*

- 32 -